**No. 22-20482**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

DONALD WOODS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANNY THOMAS; MARKETTA CHANTA THOMAS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF DANNY THOMAS, NAISHA BELL, AS NEXT FRIEND OF M.K. THOMAS; DIANE TURNER, AS NEXT FRIEND OF B.D. TURNER; NECOLE WEST, AS NEXTFRIEND OF D.R. THOMAS (12); DENISE MATTHEWS, AS NEXT FRIEND OFD.R. THOMAS (3); RONSHELL HAMPTON, AS NEXT FRIEND OF L.N. HAMPTON; ADENIKE THOMAS, INDIVIDUALLY,

Plaintiffs - Appellants,

v.

HARRIS COUNTY, TEXAS, CAMERON BREWER,

Defendants - Appellees.

---

On Appeal from the United States District Court for the
Southern District of Texas, Houston Division

---

**BRIEF FOR APPELLANTS**

---

**ORAL ARGUMENT REQUESTED**

Marion M. Reilly
Robert C. Hilliard
Rudy Gonzales
Jessica Pritchett
Matthew McMullen
Leslie Tyroch
HILLIARD MARTINEZ GONZALES LLP
719 South Shoreline Boulevard
Corpus Christi, Texas 78401
Phone: (361) 882-1612

Ben Crump
Ben Crump Law PLLC
122 S. Calhoun St.
Tallahassee. FL 32301
Phone: (800) 710-3555

A. Vince Colella
Moss & Colella
2811 Northwestern Hwy
11th Floor, Ste. 1150
Phone: (248) 945-0100

*ATTORNEYS OF RECORD FOR APPELLANTS*

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiffs – Appellants:

   a. Donald Woods
   b. Marketta Chanta Thomas
   c. Adenike Raynell Thomas
   d. Naisha Bell, as Next Friend of M.K. Thomas
   e. Diane Turner, as Next Friend of B.D. Turner
   f. Necole West, as Next Friend of D.R. Thomas
   g. Denise Matthews, as Next Friend of D.R. Thomas
   h. Ronshell Hampton, as Next Friend of L.N. Hampton

2. Defendants – Appellees:

   a. Harris County, Texas
   b. Cameron Brewer

3. Attorneys for Plaintiffs – Appellants:

   a. Robert C. Hilliard, Marion M. Reilly, Rudy Gonzales, Catherine Tobin, John Martinez, Jessica Pritchett, Alex Hilliard, John Duff, Matthew McMullen, Leslie Tyroch

   HILLIARD MARTINEZ GONZALES LLP
   719 South Shoreline Boulevard
   Corpus Christi, Texas 78401

   b. A. Vince Colella
   MOSS & COLELLA

28411 Northwestern Hwy
11th Fl, Ste. 1150
Southfield, MI 48034

c. Ben Crump
BEN CRUMP LAW PLLC
122 S. Calhoun Street
Tallahassee, FL 32301

4.   Harris County, Texas, Defendant—Appellee

5.   Cameron Brewer, Defendant

6.   Attorneys for Defendants – Appellees:

a. Stan Clark
1019 Congress, 15th Floor
Houston, TX 77002

b. Richard H. Cobb
1035 Dairy Ashford, Suite 315
Houston, TX 77079

*/s/ Marion M. Reilly*

Robert C. Hilliard
Rudy Gonzales
John B. Martinez
Marion M. Reilly
Jessica J. Pritchett
Matthew McMullen
HILLIARD MARTINEZ GONZALES LLP
719 South Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone: (361) 882-1612
hmgservice@hmglawfirm.com

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 28.2.3, Appellants respectfully request oral argument because this case raises important and urgent questions about the scope of clearly established constitutional law. The keystone issue in this case is whether an unarmed man in mental distress, posing no threat to the officer or the public, has a clearly established right to not be shot dead by the police officer within seconds of encountering that officer. This case also affords the Court an opportunity to clarify the Fifth Circuit's application of *Monell* when a county systemically declines to equip its officers with tools to employ less-than-lethal-force. Due to the grave import of this litigation on the civil rights of Texas citizens, Appellants entreat the Court to hear oral argument before rendering its final decision.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

REQUEST FOR ORAL ARGUMENT ............................................................ iii

TABLE OF CONTENTS ................................................................................iv

TABLE OF AUTHORITIES ..........................................................................iv

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF THE ISSUES .......................................................................3

STATEMENT OF THE CASE ..........................................................................4

      I.     Statement of the Facts ...........................................................4

      II.    Proceedings Below ...............................................................8

SUMMARY OF THE ARGUMENT ..................................................................10

STANDARD OF REVIEW ...........................................................................13

ARGUMENT ...........................................................................................15

      I.     BREWER IS NOT ENTITLED TO QUALIFIED IMMUNITY
           BECAUSE HIS USE OF EXCESSIVE FORCE VIOLATED MR.
           THOMAS'S CLEARLY ESTABLISHED CONSTITUTIONAL
           RIGHTS IN AN OBJECTIVELY UNREASONABLE MANNER .......... 15

           A.     Brewer's use of force was objectively reasonable ....... 16

1. *Using deadly force on an unarmed man posed no imminent threat of death or serious bodily harm is objectively reasonable* ........................... 17

2. *A reasonable jury could conclude that Brewer's use of force was objectively unreasonable* ....................................... 19

B. Mr. Thomas has a clearly established constitutional right to be free from deadly force ........................................ 22

    1. *Mr. Thomas's clearly established constitutional right is obvious* ........................... 24

    2. Mr. Thomas's clearly established right is supported by other precedent ........................... 30

        a. *Hobart v. Estrada,* 582 Fed. Appx. 348 (5th Cir. 2014) supports Mr. Thomas's clearly established right ........................... 30

        b. *Khansari v. City of Houston,* 14 F. Supp. 3d 842 (5th Cir. 2014) supports Mr. Thomas's clearly established right ................................................. 32

        c. *Releford v. City of Houston,* No. 4:14-CV-2810, 2017 WL 774552, at *1 (S.D. Tex. Feb. 29, 2016) supports Mr. Thomas's clearly established right .......... 33

II. SUMMARY JUDGMENT WAS IMPROPER ON APPELLANTS' CLAIMS AGAINST HARRIS COUNTY ........................................ 36

A.    Harris County's unconstitutional policies and customs subject the County to liability under *Monell* .......................................................... 36

    *1.    Harris County failed to adopt systematic use of force reviews and evaluations* ...................... 38

    *2.    Harris County failed to equip officers with less-lethal force options* ..................................... 41

    *3.    There is a pattern demonstrating excessive force against African American males and those in medical crisis, and a pattern of failure to render medical aid* ............................. 43

    *4.    Harris County's unconstitutional policies were a moving force behind Mr. Thomas's constitutional deprivations and Harris County was deliberately indifferent* .................. 46

B.    Harris County is subject to liability for failure to train .......................................................... 50

    *1.    Harris County cannot rely on compliance with TCOLE to circumvent summary judgment because there are gaps in Brewer's training record and the evidence demonstrates the training was otherwise inadequate* ......................................... 54

    *2.    Harris County's failure to train was a moving force behind Mr. Thomas's constitutional deprivations* ...................................... 54

3.    *Harris County was deliberately indifferent to its failure to train* ............................................... 57

C.    Summary Judgment was improperly granted as to Appellants' ADA and RA claims ............................... 58

CONCLUSION ......................................................................... 60

CERTIFICATE OF SERVICE ................................................... 62

CERTIFICATE OF COMPLIANCE ............................................ 62

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ........................................................ 22

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986) ............................................... 14

*Bd. of Cnty Com'rs of Bryan Cnty, Okl. v. Brown,*
    520 U.S. 397 (1997) ................................................... 47, 50

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ........................................................ 25

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................ 13

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) .............................................. 47, 50, 51

*Connick v. Thompson,*
    563 U.S. 51 (2011) ......................................................... 36

*Graham v. Connor,*
    490 U.S. 386 (1989) ................................................ *passim*

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ....................................................... 23

*Monell v. N.Y.C. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ................................................ *passim*

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ................................................. 15, 16

*Saucier v. Katz,*
    433 U.S. 194 (2001) ................................................................ 11, 15

*Siegert v. Gilley,*
    500 U.S. 226 (1991) ........................................................... 13

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ................................................... *passim*

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT CASES:**

*Aguirre v. City of San Antonio,*
    995 F.3d 395 (5th Cir. 2021) ......................................... 24

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,*
    271 F.3d 624 (5th Cir. 2001) ......................................... 14

*Bazan ex rel. Bazan v. Hidalgo County,*
    246 F.3d 481 (5th Cir. 2001) ................................... 13, 14

*Cole v. Carson,*
    935 F.3d 444 (5th Cir. 2019) ................................... 25, 26

*Connor v. Travis Cty.,*
    209 F.3d 794 (5th Cir. 2000) ................................... 11, 58

*Darden v. City of Fort Worth,*
    880 F.3d 722 (5th Cir. 2018) ................................... 24, 25

*Deville v. Marcantel,*
    567 F.3d 156 (5th Cir. 2009) ......................................... 19

*Evans v. City of Houston,*
    246 F.3d 344 (5th Cir. 2001) ......................................... 15

*Flores v. City of Palacios,*
    381 F.3d 391 (5th Cir. 2004) ............................. 17, 22, 24

*Graves v. Zachary,*
      277 Fed. Appx. 344 (5th Cir. 2008)  ......................................... 18, 27

*Hainze v. Richards,*
      207 F.3d 795 (5th Cir. 2000)  ..................................................... 58, 59

*Hobart v. Estrada,*
      582 Fed. Appx. 348 (5th Cir. 2014)  ........................................ *passim*

*Khansari v. City of Houston,*
      14 F. Supp. 3d 842 (5th Cir. 2014)  ......................................... *passim*

*Kinney v. Weaver,*
      367 F.3d 337 (5th Cir. 2004) (en banc)  .................................. 23, 24

*Marshall v. Russell,*
      391 F. Supp. 3d 672 (S.D. Tex. 2018)  ........................................  35

*Mason v. Lafayette City-Parish Consol. Gov't,*
      806 F.3d 268 (5th Cir. 2015)  .............................................. 16-17, 18

*Newman v. Guedry,*
      703 F.3d 757 (5th Cir. 2012)  .................................................. 18, 33

*Ontiveros v. City of Rosenberg Tex.,*
      564 F.3d 379 (5th Cir. 2009)  .......................................................  14

*Pineda v. City of Houston,*
      291 F.3d 325 (5th Cir. 2002)  .................................................  38, 52

*Piotrowski v. City of Houston,*
      237 F.3d 567 (5th Cir. 2001)  .......................................................  38

*Reyes v. Bridgwater,*
      362 Fed. Appx. 403, 406 (5th Cir. 2010)  ....................................  24

*Rivas-Villegas v. Cortesluna,*
      142 S.Ct. 4, 7 (2021)  ...................................................................  22

*Rhyne v. Henderson Cty.,*
      973 F.2d 386 (5th Cir. 1992) .................................................. 58, 59

*Roberts v. City of Shreveport,*
      397 F.3d 287 (5th Cir. 2005) ........................................................ 51

*Rockwell v. Brown*,
      664 F.3d 985 (5th Cir. 2011) ....................................................... 18

*Sanchez v. Fraley,*
      376 Fed. Appx. 449 (5th Cir. 2010) ............................................ 18

*Sanchez v. Oliver,*
      995 F.3d 461 (5th Cir. 2021) ....................................................... 13

*Sanders–Burns v. City of Plano,*
      594 F.3d 366 (5th Cir. 2010) ....................................................... 51

*Turner v. Upton Cnty, Tex.,*
      915 F.2d 133 (5th Cir. 1009) ....................................................... 37

*Valle v. City of Houston,*
      613 F.3d 536 (5th Cir. 2010) ............................................ 38, 39, 47

*Webster v. City of Houston,*
      735 F.2d 838 (5th Cir. 1984) (en banc) ....................................... 38

*Whitt v. Stephens County,*
      529 F3d 278 (5th Cir. 2008) ........................................................ 37

*Zarnow v. City of Wichita Falls, Tex.,*
      614 F.3d 161 (5th Cir. 2010) ................................................. 37, 56

**FEDERAL DISTRICT COURT CASES:**

*LaGatta v. Harris County*,
   No. H-08-3189, 2011 WL 1100170 (S.D. Tex. 2011) .................... 45

*Loftis v. Dallas Cnty., Tex.*,
   No. 3:10-CV-0116-B, 2011 WL 4090962, *1 (N.D. Tex. Sept. 14,
   2011) ..................................................................................... 46

*Releford v. City of Houston*,
   No. 4:14-CV-2810, 2017 WL 774552, at *1 (S.D. Tex. Feb. 29,
   2016) ................................................................................. 34, 36

*Salcido as Next Friend of K.L. v. Harris County, Tex.*,
   No. H-15-2155, 2018 WL 6618407, *1 (S.D. Tex. Dec. 18, 2018) . 51

*Sanchez v. Gomez*,
   No. EP-17-CV-133-PRM, 2020 WL 1036046, *1 (W.D. Tex. Mar. 3,
   2020) .......................................................................*passim*

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. amend. IV ............................................................. 16

**RULES & REGULATIONS:**

28 U.S.C. § 1331 ...................................................................... 1

29 U.S.C. § 1291 ...................................................................... 2

42 U.S.C. § 1983 ........................................................... *passim*

Fed. R. App. P. 34(a) ..............................................................iii

Fed. R. Civ. P. 56(c) ............................................................... 14

Fifth Circuit Rule 28.2.3 ........................................................ iii

**SECONDARY SOURCES:**

Martin A. Schwartz and Kathryn R. Urbonya, Section 1983
Litigation, FED. JUD. CTR. (2d ed. 2008) ........................................... 14

# STATEMENT OF JURISDICTION

## A.    District Court's Jurisdiction

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." Appellants' suit against Appellees was in part based upon 42 U.S.C. § 1983. United States law requires that those who deprive any person of rights and privileges protected by the Constitution of the United States provided by state law be liable in action at law, suit in equity, or other appropriate measure. 42 U.S.C. § 1983.

In the instant matter, Appellants are United States citizens. They filed suit individually and as representatives of the estate of Danny Ray Thomas against Harris County ("Harris County" or "HCSO") and former Harris County Sheriff's Deputy Cameron Brewer ("Brewer") and are entitled to relief for damages sustained as a result of Appellees' constitutional deprivations.

## B.    Court of Appeal's Jurisdiction

This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291 because the judgment below is a final judgment of the United States District Court.

## C.    Timeliness of Appeal

The United States Magistrate Judge entered her Memorandum and Recommendations regarding Brewer and Harris County's Motions for Summary Judgment on May 26, 2022. ROA.352-3577. Appellants timely filed their Objections to the Memorandum and Recommendations on June 9, 2022.  ROA.3580.  The district court entered an Order adopting the Memorandum and Recommendations and issued *de novo* conclusions on August 22, 2022. ROA.3647. The district court entered a Final Judgment on that same date.  ROA.3657.  Appellants' Notice of Appeal was timely filed on September 19, 2022. ROA.3658.

## D.    Final Judgment

This appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

I.     Whether an unarmed African American male, posing no threat to

the public or an officer, had a clearly established constitutional

right to be free from deadly force.

II.    Whether there are genuine issues of material fact as to the

existence of unconstitutional customs and failures to train by

Harris County that rose to the level of constituting official

departmental policies that were the moving force behind Plaintiffs'

injuries, thereby subjecting Harris County to liability.

## STATEMENT OF THE CASE

### I.     Statement of the Facts

***Danny Ray Thomas is Shot and Killed***

In the middle of the afternoon on March 22, 2018, Danny Ray Thomas became another police-shooting victim—and yet another tragic example of Harris County Sheriff's Office deputies using excessive, deadly force against unarmed African American men. ROA.2128, 2356-57. Around 1:00 p.m. that day, Cameron Brewer, a Harris County Sheriff's Office deputy, came upon Mr. Thomas in the street at the intersection of Imperial Valley and Greens Road in Houston, Texas.  Mr. Thomas, a thirty-five-year-old African American man, was clearly in a state of crisis at the time Brewer first saw him. ROA.2128, 2152, 2356-57. Mr. Thomas was visibly unarmed, wobbling unsteadily, and had his pants around his ankles. ROA.2128, 2356-57.  He had just been pushed by another motorist. ROA.2128, 2356-57.

Rather than attempt to assist Mr. Thomas, Brewer drew his weapon on Mr. Thomas, demanded that he get on the ground, and a mere sixteen seconds later, fired his weapon at Mr. Thomas, killing him with a single fatal shot. ROA.2128, 2152, 2356-57 Within sixteen seconds of

Brewer arriving on the scene, Brewer fatally shot Mr. Thomas, an unarmed, non-dangerous, African American man in crisis. ROA.2128, 2152, 2356-57.

### *The Shooter's Actions & Admissions*

Based upon the available evidence, Brewer "observed a disturbance in progress" as Brewer was "enroute [sic] to his assigned beat." ROA.2160, 2610-11. Mr. Thomas was in the street with his pants around his ankles, allegedly banged on the hood of a vehicle that was parked in the intersection, when he was shoved by another motorist. ROA.2610-11, 1388. Brewer did not witness Mr. Thomas commit any crimes, and Brewer admitted that he "never once" saw Mr. Thomas with a weapon or object. ROA.2494, 2665, 2161, 2165. At the very most, the evidence suggests that Mr. Thomas "was possibly involved in an infraction for impeding the flow of traffic." ROA.2165, 2497. Brewer admits the very most that Mr. Thomas would have been guilty of was a misdemeanor. ROA.2497, 3055.

The record is rife with Brewer's admissions that Mr. Thomas posed no threat. Brewer admits:

- He did not see any weapons on the front of Mr. Thomas's person, ROA.3061,

- He did not see Mr. Thomas holding any weapons, ROA.3061,

- He did not see Mr. Thomas lunge at the driver even though the driver pushed Mr. Thomas, ROA.3061,

- He did not see Mr. Thomas attempt to kick the driver, strike the driver, or punch the driver, ROA.3061,

- The driver, who was the aggressor, was not injured in any way, ROA.3061-62,

- Mr. Thomas initiated no physical contact with any person on the scene, ROA.3062,

- Mr. Thomas could not have made physical contact with any civilians on the scene from where he was positioned, ROA.3062,

- Mr. Thomas was not assaulting Brewer, ROA.3065,

- Mr. Thomas was not lunging at Brewer when he was shot, ROA.3066,

- Mr. Thomas did not tackle, attempt to kick, or attempt to strike Brewer, ROA.3067,

- Brewer was equipped with a taser and claimed to be trained in the use of a taser, but did not use a taser before using lethal force, ROA.3052, 2436, 2448,

- "As soon as [he] jumped out of the vehicle, [he] drew [his] duty weapon", ROA.2494,

- He made the decision to use deadly force before even making eye contact with Mr. Thomas, ROA.2501, and

- Mr. Thomas was not utilizing lethal force against Brewer, ROA.2505.

Rather than advise dispatch and request back up or remain in his vehicle in a position of cover, Brewer exited his vehicle and immediately unholstered his weapon and pointed it at Mr. Thomas. ROA.2611, 2629. This "unnecessarily escalated the situation as Mr. Danny Ray Thomas was not physically resistive, aggressive, or violent but rather passively non-compliant." ROA.2629, 3057-58. Brewer "was not faced with an imminent or immediate threat of death or serious bodily injury when he used lethal force, shooting, and killing Mr. Danny Ray Thomas." ROA.2631, 2494-95.

### *Harris County's Unconstitutional Policies*

At the time of the shooting, Harris County Sheriff Ed Gonzalez admitted that there was no systemic review and evaluation of Harris County's use of force policies, procedures, and practices. ROA.2359, 2816-18. Further, although the County recognized the critical importance of its officers utilizing less-lethal force, it failed to equip its officers with such devices, like pepper spray, a baton, or a bean bag shotgun. ROA.2421-23, 2173.

Further, there is a question of fact as to whether Brewer had the requisite use-of-force training. Harris County should have enforced annual use-of-force training, but there are gaps in Brewer's training. ROA.2248. For instance, Brewer did not have lethal force training in 2012, 2016, 2017, or 2018—critical years before the shooting. ROA.2248. Nor did he have any less-lethal force training, such as use of a taser or oleoresin capsicum ("OC") spray in 2016, 2017, or 2018. ROA.2248.

## II. Proceedings Below

After Mr. Thomas's death, his family asserted claims under 42 U.S.C. § 1983 against Brewer and Harris County. ROA.3527. As to Brewer, Appellants alleged violations of the Fourth and Fourteenth Amendment, as well as state law claims for wrongful death, survival, negligence, and gross negligence. ROA.20-44, 3651. Appellants sued the county under *Monell v. N.Y.C. Department of Social Services,* 436 U.S. 658 (1978). ROA.38-41. The County and Brewer filed separate motions for summary judgment, to which Appellants filed separate responses. ROA.3527. Brewer did not move for summary judgment on Appellants'

Fourteenth Amendment Due Process and Equal Protection Claims[1] or on their state law claims. ROA.3647-51. Only the County filed a reply brief. ROA.3527.

After a hearing, the magistrate judge issued a Memorandum and Recommendation. ROA.3526. The magistrate judge opined that Appellants raised a genuine issue of material fact that Brewer's use of force was objectively unreasonable but determined that Brewer was entitled to qualified immunity because his actions did not violate Mr. Thomas's clearly established rights. ROA.3531. The magistrate further determined that there was not a genuine issue of material fact to establish municipal liability. ROA.3553. Appellants timely objected to the Memorandum and Recommendation regarding the clearly established law and the County's liability under *Monell*. ROA.3580.

The district court overruled Appellants' objections on the Fourth and Fourteenth Amendment claims and municipal liability, and adopted the Memorandum and Recommendation. ROA.3650-53. The district court sustained Appellants' objections on the Magistrate's recommendation for the entry of a take-nothing judgment, as Brewer

---

[1] Plaintiffs subsequently withdrew their Fourteenth Amendment Equal Protection claim but maintained the remaining claims. ROA.3651.

failed to move for summary judgment on the state law claims. ROA.3652-53. The district court determined that "Plaintiffs' request to proceed with their state law claims against Brewer is appropriate, but with all federal question claims now having been resolved, it is better for the state law claims to be adjudicated in state court." ROA.3653. The district court declined to exercise supplemental jurisdiction over those claims. RPA.3653. This appeal followed.

## SUMMARY OF THE ARGUMENT

## I.

Section 1983 exists for cases like this one. Harris County prosecutors determined there was probable cause to charge Brewer with murder and he was indicted for his conduct related to this tragic shooting. Brewer's conduct was so severe—so egregious—that he had to try his criminal guilt before a jury of his peers. Certainly, the same conduct that gave rise to a criminal charge and indictment is enough to clear the lower, civil hurdle of whether there is genuine issue of material fact on Brewer's constitutional violations.

In addition, Brewer's own department found that Brewer violated clearly established departmental policies—policies that are expressly premised upon the Supreme Court precedent outlined in *Graham v. Connor*, 490 U.S. 386 (1989) and *Saucier v. Katz,* 433 U.S. 194 (2001). Brewer's own department fired him because it found that Brewer did not act in accordance with the constitution vis-à-vis departmental policies (again which expressly adopt and incorporate the applicable constitutional standard). To hold that Danny Ray Thomas's

constitutional right to be free from death-by-shooting under these facts was not clearly established defies the law and ignores the egregious facts presented by this case. Respectfully, that decision was the wrong one— Brewer was not entitled to qualified immunity, and the lower court's decision should be reversed.

## II.

There are genuine issues of material fact as to the existence of unconstitutional policies, official custom, and failures to train in Harris County that were the moving force behind Mr. Thomas's constitutional deprivations. There are also genuine issues of material fact on Harris County's deliberate indifference to the rights of individuals, like Mr. Thomas, who would unquestionably suffer as a result. These fact questions are best suited for jury deliberation, not for judgment as a matter of law. The district court's judgment should therefore be reversed.

## STANDARD OF REVIEW

The Court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021). Summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, a court must determine (1) whether the plaintiff alleged a violation of a clearly established constitutional right, and (2) whether the defendant's conduct was objectively unreasonable under clearly established law existing at the time of the incident. *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1991); *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001). "Of course, on *summary judgment*, the objective reasonableness inquiry is a question of law; in other words, this question of law *cannot* be decided if there are *genuine issues of material fact*." *Bazan,* 247 F.3d at 490 (emphasis in original).

In other words, "[t]o negate a defense of qualified immunity, the plaintiff need not present 'absolute proof ....'" *Ontiveros v. City of*

*Rosenberg Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). Rather, when the facts, "as interpreted in the light most favorable to the plaintiff indicate a violation of clearly established federal law, and the discovery indicates material facts are in dispute, then summary judgment is not possible. At this point, the 'immunity from suit' is properly lost and the case must go to trial." Martin A. Schwartz and Kathryn R. Urbonya, Section 1983 Litigation, FED. JUD. CTR., at 154 (2d ed. 2008) (emphasis added).

A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001); *Bazan,* 246 F.3d at 489. A dispute regarding a material fact is genuine when the dispute concerns an issue that a reasonable jury could resolve in favor of either party. *Anderson,* 477 U.S. at 250. Further, when considering the evidence, courts must resolve all doubts in favor of the non-moving party and must draw all reasonable inference in favor of the non-moving party. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001). Courts should not, however, "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Id.?*

# ARGUMENT

## I.    BREWER IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE HIS USE OF EXCESSIVE FORCE VIOLATED MR. THOMAS'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS IN AN OBJECTIVELY UNREASONABLE MANNER.

In assessing a defendant's qualified immunity defense, courts undertake a two-pronged inquiry. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  First, courts assess the facts in the light most favorable to the plaintiff to determine if the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 433 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 231.  Second, courts determine whether the right was clearly established at the time of the alleged misconduct. *Id.* The test to determine if the right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

The lower court considered both factors and determined that there was a genuine issue of material fact that Brewer's use of force was objectively unreasonable. ROA.3541. Appellants do not dispute the lower court's objective reasonableness conclusion and agree that Brewer's use of deadly force was objectively unreasonable. Appellants nevertheless

15

address both prongs of qualified immunity in order because doing so "is often beneficial" and because the cases and facts on the objective reasonableness prong are relevant to the clearly established prong. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

## A.    Brewer's use of force was objectively unreasonable.

The Fourth Amendment guarantees citizens the right "to be secure in their persons…against unreasonable…seizures." U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394 (1989). Officers violate a citizen's Fourth Amendment right to be free from an unreasonable seizure if (1) in using force, the officers "seize" the suspect within the meaning of the Fourth Amendment, and (2) the force they use in the seizure is objectively unreasonable. *Id*. To succeed on an excessive force claim, a plaintiff must demonstrate: (a) an injury; (b) that resulted from the use of force that was clearly excessive to the need; and (c) the excessiveness of which was objectively unreasonable. *See, e.g., Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 276 (5th Cir. 2015).

### 1. Using deadly force on an unarmed man posing no imminent threat of death or serious bodily harm is objectively unreasonable.

The Fifth Circuit gauges the objective reasonableness of the force by balancing the amount of force used against the need for force. *Graham,* 490 U.S. at 396; *Hobart v. Estrada,* 582 Fed. Appx. 348, 352 (5th Cir. 2014). Factors to consider include the (1) severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396. All factors are considered from the perspective of a reasonable officer on the scene, not using "the 20/20 vision of hindsight." *Id.*

When an officer uses deadly force, the objective reasonableness balancing test is constrained. *Flores v. City of Palacios,* 381 F.3d 391, 399 (5th Cir. 2004). "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.; see also Tennessee v. Garner,* 471 U.S. 1, 3 (1985). The inquiry is limited to whether the officer "was in danger at the moment of the threat" that resulted in the use of

17

force. *Mason*, 806 F.3d at 276 (*citing Rockwell v. Brown*, 664 F.3d 985, 1001 (5th Cir. 2011)). The absence of a threatening gesture by a suspect often leads to the denial of qualified immunity. *See, e.g., Sanchez v. Fraley,* 376 Fed. Appx. 449, 451-52 (5th Cir. 2010) (suspect's hands at side when police shot him); *Graves v. Zachary*, 277 Fed. Appx. 344, 346 (5th Cir. 2008) (suspect never threatened, pointed weapon, or moved aggressively).

Further, this Court has been more skeptical of officers employing deadly force when suspects are unarmed. For example, in *Newman v. Guedry,* 703 F.3d 757, 759-60 (5th Cir. 2012), this Court reversed a grant of qualified immunity to an officer who beat a suspect with a nightstick thirteen times and then tasered him three times even though he obeyed commands, committed no crime, and posed no threat to anyone's safety. There, this Court determined it was dispositive that the officers immediately resorted to using tasers and nightsticks before attempting to employ "physical skill, negotiation, or even commands." *Id.* at 763; *see also Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (reversing summary judgment for police officer who broke window to suspect's car, dragged her from it, and then slammed her against it). In *Hobart v.*

*Estrada,* 582 Fed. Appx. 348, 355 (5th Cir. 2014), this Court concluded that an officer's physical altercation with a suspect did not justify deadly force when the two were separated for multiple seconds.

### 2. *A reasonable jury could conclude that Brewer's use of force was objectively unreasonable.*

A reasonable jury applying the *Graham* factors could correctly determine that Brewer use of deadly force was unreasonable. Based upon the available evidence, Brewer "observed a disturbance in progress" as he was "enroute [sic] to his assigned beat." ROA.2550. Mr. Thomas was in the street with his pants around his ankles, allegedly banging on the hood of a vehicle that was parked in the intersection. ROA.2550. Brewer did not witness Mr. Thomas commit any crimes, and admitted that he "never once" saw Mr. Thomas with a weapon or object. ROA.2550. Brewer admits that if Mr. Thomas had stopped walking in his direction, the very most that Mr. Thomas would have been guilty of was a misdemeanor. ROA.2497. At the very most, the evidence suggests that Mr. Thomas "was possibly involved in an infraction for impeding the flow of traffic." ROA.2166. This offense carries a maximum punishment of 180 days in jail—certainly not death. ROA.3536.

Likewise, the evidence supports that Mr. Thomas did not pose a serious and immediate threat. Mr. Thomas was unarmed and made no verbal threats nor indicate that he was about to attack. ROA.3536, 2495. He made no physical or threatening contact with anyone at the scene. ROA.2495. Rather than advise dispatch and request back up, or remain in his vehicle in a position of cover, Brewer exited his vehicle and immediately unholstered his weapon and pointed it at Mr. Thomas. ROA.2550, 2169. This "unnecessarily escalated the situation as Mr. Danny Ray Thomas was not physically resistive, aggressive, or violent but rather passively non-compliant." ROA.2172. Within sixteen seconds of arriving on the scene (a scene to which Brewer just happened upon and was not called to respond to), Brewer shot and killed Mr. Thomas. ROA.2172.  Brewer should have utilized less-lethal force to gain control over Mr. Thomas, such as, verbal commands, use of a taser, defensive tactics, and nerve point strikes. ROA.3422, 2692. Moreover, when Brewer shot Mr. Thomas, he was still four feet away, hobbled by his pants and swinging his arms while walking. ROA.3536-37. Mr. Thomas was not rushing or sprinting—nor could be, given that his pants were around his ankles. ROA.3536-37.

Scott A. DeFoe, retired LAPD SWAT Sergeant II+1, additionally expressed opinions about the objectively unreasonable nature of Brewer's conduct. ROA.2163-71. A reasonable jury could credit the testimony and evidence in this case and readily conclude that Brewer and the surrounding civilians faced little to no threat from Mr. Thomas prior to Brewer's unholstering his weapon and shooting Mr. Thomas. Under the facts, Brewer lacked probable cause to believe that Mr. Thomas posed any threat of harm—let alone a serious one—to himself or others, and shooting Mr. Thomas in the manner that he did would be clearly excessive and unreasonable. *See Hobart v. Estrada*, 582 Fed. Appx. at 348.

Although Appellants do not dispute the district court's ultimate determination that Brewer's use of force was objectively unreasonable, the court's analysis as to the third *Graham* factor—whether the suspect actively resisted arrest or was fleeing—is incorrect. Specifically, the court determined that the third factor weighs slightly in Brewer's favor, "[b]ut this factor does not merit significant weight." ROA.3537. Brewer shouted to get down on the ground, but given Mr. Thomas was not the aggressor and was in fact pushed by the other person on the scene, it's not even

clear that Mr. Thomas understood the commands were directed at him, nor was it clear that Mr. Thomas was under arrest. ROA.3061. Additionally, based upon Mr. Thomas's clearly incapacitated mental state, an objectively reasonable officer could determine that he could not comprehend the transpiring events and that he was in need of medical attention. ROA.2163.

Because all of the *Graham* factors weigh in Plaintiffs' favor, the district court correctly determined that Brewer's use of force was objectively unreasonable.

## B.    Mr. Thomas had a clearly established constitutional right to be free from deadly force.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4, 7 (2021) (per curiam) ("A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates

that right."). There is no requirement that there be a case with the same factual scenario. *Reyes v. Bridgewater,* 362 Fed. Appx. 403, 408 (5th Cir. 2010). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decision gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc); *see also Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

The constitutional limits on the use of deadly force have been clearly established for nearly five decades: "Police officers may employ deadly force only when necessary to prevent 'a threat of serious physical harm, either to the officer or to others ….' " *Tennessee v. Garner*, 471, U.S. 1, 11 (1985). Unlike most "excessive force" cases in which the degree of permissible force varies widely from case to case, the **only** issue in a case involving deadly force is whether the facts apparent to the officer show that the suspect posed an immediate threat of significant harm to the officer or others. *Id.* "*Tennessee v. Garner* announced the principle that the use of deadly force is permitted only to protect the life of the shooting officer or others: 'Where the suspect poses no immediate threat to the

officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (*citing Garner*, 471 U.S. at 11).

### 1. *Mr. Thomas's clearly established constitutional right is obvious.*

The *Garner* principle prohibiting deadly force in the absence of an immediate threat is alone sufficient in obvious cases, and this Court has applied it in such cases, without dependance on the fact pattern of other cases. *See, e.g., Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004); *see also Aguirre v. City of San Antonio,* 995 F.3d 395, 416 (5th Cir. 2021) ("[A] jury could conclude that no reasonable officer would have perceived [Aguirre] as posing an immediate threat to the Officers' safety or thought he was resisting arrest.") (*citing Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018)); *Aguirre v. City of San Antonio,* 995 F.3d 395 at 416 ("Thus, if the Officers unnecessarily placed Aguirre in the maximal-restraint position when there was no reason to believe he had committed a serious crime, that he posed a continuing threat to the Officers or public safety, or that he was resisting the Officers' seizure or holding of him, the Officers violated Aguirre's clearly established constitutional rights.");

*Darden*, 880 F.3d 731 ("[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."); *see also Brousseau v. Haugen,* 543 U.S. 194, 199 (2004) (per curiam) ("Of course, in an obvious case, Graham and Garner can 'clearly establish' the [law, even without a body of relevant case law.").

As recognized by this Court, one way to determine whether there is an obvious violation is to look back at the *Graham* factors. *Khansari v. City of Houston,* 14 F. Supp. 3d 842 (5th Cir. 2014) ("in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law.") (internal quotations omitted). Here, an analysis of those factors establishes the answer. *Supra,* Part I.A.

Other precedent supports this is an obvious case. In *Cole v. Carson,* 935 F.3d 444, 445 (5th Cir. 2019), this Court held: "This case is obvious when we accept the facts as we must." There, court denied summary judgment because there was a fact issue as to whether the suspect posed an immediate danger to the officers. *Id.* Further, the Court determined it was clearly established in 2010 that officers' use of deadly force without warning in a situation where the officers were not in immediate danger

violated the Fourth Amendment. *Id.* The facts of *Cole*, as compared to the facts here, make clear that if *Cole* was an obvious case, this case is a patently obvious case:

| *Cole v. Carson,* 935 F.3d 444 (5th Cir. 2019) | The Present Case |
|---|---|
| Police called to the scene where Ryan was walking the neighborhood armed with a handgun. *Id.* at 448. | Brewer arrived to the scene, he was not called to it. Thomas was visibly unarmed, pants around ankles, and he was pushed by another motorist. ROA.3061. |
| When officers approached, Ryan held a handgun pointed to his own head. Ryan "never pointed a weapon at the Officers." *Id.* at 449. | Thomas was not armed and he never pointed any weapon at the officer. ROA.3061.<br><br>"According to the facts in this matter, Mr. Danny Ray Thomas was determined to be a <u>Danger to Self</u> after he was observed standing in the street, wearing boxer shorts, and talking to himself." ROA.2063-66. |

| | |
|---|---|
| Ryan "never made a threatening or provocative gesture towards [the] Officers." *Id.* | Thomas did not initiate any physical contact with any person on the scene, did not assault Brewer, was not lunging at Brewer when he was shot, "did not tackle, attempt to kick, or attempt to strike Brewer." ROA.3062. |

Likewise, in *Graves v. Zachary*, the Fifth Circuit found a sufficiently obvious violation of clearly established law. 277 Fed. Appx. 344 (5th Cir. 2008). In *Graves*, the individual threatened to kill himself and shoot his ex-girlfriend, and was holding a loaded weapon to his head, when the police arrived. *Id.* at 345. The officers subsequently shot the man twice, once after he was incapacitated. *Id.* at 345, 348. The court in *Graves* held that because when police arrived, the individual did not demonstrate any threatening behavior and was incapacitated after the first shot, when the officers shot the man, this was an obvious violation of a clearly established right. *Id.* at 349. If that case qualifies as an obvious violation, so too should Mr. Thomas', particularly as he was unarmed and arguably mentally incapacitated at the time of the incident. ROA.3536 ("Mr. Thomas's blank stare, his pants around his ankles, the white crust around his mouth, and his behavior suggested that he was

suffering from an altered mental state."); *see also Roque v. Harvel,* 993 F.3d 325, 336 (5th Cir. 2021) ("If the jury accepts Plaintiffs' narrative, which is supported by video evidence, then Harvel shot a suicidal, unarmed, wounded man who was a threat only to himself. That would make this case an "obvious" one.").

The facts of this case support the application of the obvious case doctrine. Harris County Sheriff Ed Gonzalez testified that the HCSO deadly force policy in effect at the time of the incident permits a deputy to use lethal force only in the protection of his life or the life of another. ROA.236, 2531. Tellingly, the Harris County Use of Force Policy directly adopt the *Graham* reasonableness factors, and provides:

> Unreasonable force is that force that is unnecessary or excessive given the totality of the circumstances presented to the deputy/detention officer at the time the force is applied. Unreasonable force is prohibited. The use of unreasonable force will subject the deputy/detention officer applying such force to discipline and/or prosecution.

ROA.2531. Harris County itself alleged that Brewer "violated Department Policy #501—Use of Force, when he used unreasonable force when he discharged his duty weapon during an altercation…." ROA.2358.

Sheriff Gonzalez concurred with the County's determination that Brewer used unreasonable force and violated the use of force standards because: (a) deadly force is a last resort; (b) mere speculation that an individual is on drugs is not sufficient to use deadly force and he should have attempted to use an intermediate weapon, like a taser; (c) Mr. Thomas made no aggressive movements that would justify deadly force. ROA.2361-64. Sheriff Gonzalez testified that he believed, under these circumstances, that the force that was used was "unreasonable for the circumstances," and that "it was excessive for the circumstances." ROA.2361-64. Sheriff Gonzalez also explained that Brewer's subjective belief that Mr. Thomas was experiencing excited delirium did not justify his use of deadly force in this instance. ROA.2361-64.

Similarly, Sgt. Anthony Martin, a 28-year veteran of the Harris County Sheriff's office, who served in the Internal Affairs Division and lead the investigation of the case, determined that Brewer violated the use of force policy. ROA.2370. Sgt. Martin investigated the incident to present evidence to the Administrative Discipline Committee for the purpose of determining whether Brewer violated the department's use of force policy. The ADC convened to review the investigation and whether

29

disciplinary action should be taken. ROA.2369. Following the investigation, "the Administrative Discipline Committee found that Brewer violated the Harris County Use of Force Policy (501) by discharging his firearm under these circumstances." ROA.2369.

Emma Rodriguez, a 24-year veteran detective with the Houston Police Department, served in the Special Investigation Unit and investigated the incident on behalf of the Houston Police Department. ROA.2372. Det. Rodriguez explained how officers could gain control of a subject who might be suffering from excited delirium without the use of lethal force. ROA.2372

### 2. *Mr. Thomas's clearly established constitutional right is supported by other precedent.*

Despite this case being an obvious one, other cases also recognize the right violated here as being clearly established.

### a. *Hobart v. Estrada,* 582 Fed. Appx. 348 (5th Cir. 2014) supports Mr. Thomas's clearly established right.

In *Hobart v. Estrada,* 582 Fed. Appx. 348 (5th Cir. 2014), the Court recognized the clearly established rule that it is unreasonable for an officer to use deadly force against a mentally ill subject when physical contact with the officer is minimal and the subject is separated from the

officer for multiple seconds before the officer fires. In that case, Aaron Hobart was a 19-year-old suffering from schizoaffective disorder, causing delusions. *Id.* He stopped taking his medications and his mother called 911, requesting an officer from the Crisis Intervention Team. *Id.* at 351. Officer Estrada was the first to arrive on the scene and the evidence established that Hobart was unarmed and delusional. *Id.* When he arrived on scene, Hobart loudly "roared" toward Officer Estrada, raised his arms to waist level, and began to charge at him. *Id.* at 351. Estrada pulled his gun and shot Hobart. *Id.*

The Court reasoned that jury could reasonably conclude (per Mrs. Hobart's testimony), that Estrada only faced minor physical contact from Aaron, that such contact had ended, and the two men were separated for multiple seconds prior to Estrada pulling his gun and shooting Aaron. *Id.* The Court concluded that, under that factual scenario, Estrada would lack probable cause to believe that Aaron posed a significant threat of death or serious physical injury to Estrada or others, and that shooting Aaron in the manner that he did would be clearly excessive and unreasonable. *Id.* Even if an officer's mental state caused him to panic

such that he unreasonably determined that a threat was present, that would not render his determination reasonable. *See id.*

> **b.** ***Khansari v. City of Houston,*** **14 F. Supp. 3d 842 (5th Cir. 2014) supports Mr. Thomas's clearly established right.**

The Fifth Circuit, in *Khansari v. City of Houston,* 14 F. Supp. 3d 842 (5th Cir. 2014) likewise recognized as clearly established the unreasonableness of using excessive force on an unarmed subject that has not committed a crime, is not a threat to anyone's safety, and is not attempting to flee. There, 19-year-old Corey was suffering from severe anxiety that caused suicidal thoughts and depression. *Id.* He took a large number of pills and 911 was called. *Id.* at 851. A Houston police officer arrived on the scene, came out of her squad car with her long gun drawn. *Id.* Mrs. Khansari told the officer there was no need for a gun and explained the medical situation. *Id.* Additional officers arrived, and they yelled at Mr. Khansari to get out of the way or be arrested. Corey then walked out the front door and stood in the yard near the door. *Id.* Red laser beam dots then appeared on Corey, and Mrs. Khansari put herself between the officers and Corey. *Id.* Corey, fearing for her life, pushed her

out of the way when he was tased in the face and on his head, with a dart piercing his eye. *Id.*

The *Khansari* Court determined that plaintiffs alleged facts capable of establishing that the tasing of Corey was objectively unreasonable in light of clearly established law. *Id.* The Court reaffirmed the *Garner* and *Graham* factors and recognized that "'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* (*quoting Brosseau v. Haugen*, 543 U.S. 194 (2004)); *see also Newman v. Guedry*, 703. F.3d at 762 ("Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel."); *Id.* ("The lawfulness of force does not depend on the precise instrument used to apply it."). *Id.*

> **c.   *Releford v. City of Houston,* No. 4:14-CV-2810, 2017 WL 774552, at \*1 (S.D. Tex. Feb. 29, 2016) supports Mr. Thomas's clearly established right.**

On October 11, 2012, just after midnight, Officer Roseman reported to Kenny's neighborhood after receiving a suspicious person call from dispatch. *Id.* When he arrived, he talked with Roger Abbs, the person who

had called 911. *Id.* Officer Rosemon then drove to Kenny's house and used the loudspeaker in his patrol vehicle to announce, "I need to speak with Kenny. Kenny, come on out." *Id.* Kenny was either already on the porch or soon came out of his house. *Id.* He then began approaching Officer Rosemon. *Id.* At 12:09:14, Officer Rosemon radioed "shots fired," meaning that he had shot Kenny. *Id.* At 12:10:04, Officer Rosemon radioed for the Houston Fire Department to come to the scene. *Id.* At 12:10:10, Officer Rosemon radioed, "He's standing back up—keep coming." *Id.* At 12:10:24, Officer Rosemon radioed, "51, Shots fired again—he down." *Id.* At 1:48 AM, Kenny was pronounced dead at the hospital. *Id.*

Judge Ellison refused to grant summary judgment in the case because there were key questions of material fact as to the facts leading up to the first shot and as to what happened between the two shots. Namely, the court asked:

> Before Officer Rosemon shot Kenny, could he see that Kenny was unarmed? It is undisputed that Kenny was, in fact, unarmed. However, Officer Rosemon says that, during their entire encounter leading up to the shooting, he could not see Kenny's left hand because Kenny was holding it behind his back. According to other witnesses, Kenny's hands were visible. Another contested issue is whether Officer Rosemon knew that Kenny suffered from mental health problems. Officer Rosemon says he had no knowledge of any mental

34

> health issues, while Mr. Abbs says he told 911 and
> Officer Rosemon that Kenny had mental health
> problems.

*Id.*

Just as in *Releford*, there are—at a minimum—key questions of material fact the preclude summary judgment. Although it is undisputed here that Mr. Thomas was unarmed, the evidence raises a question of fact as to whether a reasonable officer, based on the facts presented before him, would have understood that Mr. Thomas was experiencing a mental health crisis. ROA.2163, 2356, 2357.

### d. *Marshall v. Russell,* 391 F. Supp. 3d 672 (S.D. Tex. 2018) supports Mr. Thomas's clearly established right.

In *Marshall v. Russell*, the court recognized that it was clearly established that an officer cannot use deadly force against an individual not suspected of any serious crime who wasn't threatening the officer and was undergoing a medical crisis. *Id.* And, the circumstances in that case were even more severe than those here because the individual was holding a blunt weapon. *Id.* As such, summary judgment should have been denied, warranting reversal of the district court's judgment.

**II.  SUMMARY JUDGMENT WAS IMPROPER ON APPELLANTS' CLAIMS AGAINST HARRIS COUNTY.**

The district court's determination granting summary judgment in Harris County's favor on Appellants' municipal and failure to train claims was likewise improper.

**A.    Harris County's unconstitutional policies and customs subject it to liability under *Monell*.**

A municipality is a "person" subject to suit under § 1983 and may be liable if it " 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected to' such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *Whitt v. Stephens Cnty.*, 529 F3d 278, 283 (5th Cir. 2008). In interpreting the Supreme Court's guidance on municipal liability, the Fifth Circuit has derived "three attribution principles" that must be alleged in support of such a claim: "(1) an official policy (or custom), of which (2) a policymaker[2] can be charged with actual or

---

[2] "[I]t has long been recognized that, in Texas, the county Sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (citing *Turner v. Upton Cnty, Tex.*, 915 F.2d 133, 136 (5th Cir. 2009)). Harris County does not challenge the policymaker prong of the analysis.

constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 541-42 (*quoting Pineda*, 291 F.3d at 328). Even a single decision may qualify "if the municipal actor is a final policymaker." *Id.* Although an official policy is ordinarily contained in duly promulgated policy statements, ordinances, or regulations, the existence of a policy is not limited to formulaic recitations codified in a handbook, manual, or the like. Indeed, a policy may also be evidenced by custom. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc) ("[A] persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that it fairly represents municipal policy….").

Further, "a department's decision not to implement a policy set forth in a proposal may constitute an official policy of failing to implement such policy." *Sanchez v. Gomez*, 2020 WL 1036046, at *36 (W.D. Tex. Mar. 3, 2020); *see also Valle*, 613 F.3d at 545 (plaintiff presented sufficient summary judgment evidence to raise jury issue as to "whether the department's decision not to implement the CIT training recommendations in [an internal] proposal constituted an official policy of failing to adequately train.").

### 1. *Harris County failed to adopt systematic use of force reviews and evaluations.*

Here, Sheriff Ed Gonzalez admitted that at the time of the shooting there was no systematic review and evaluation of the use of force policies, procedures, and practices. ROA.2816-17. Namely, he admitted that "in my first term, we didn't really have a—a policy that—that—I mean, with so much volume of when we're talking about data in terms of keeping up with—with policies and all that, I wanted a more robust process, so we developed a policy unit with—with a team." ROA.2817. However, that policy unit did not come into place until 2020, and before that "it was more of an ad hoc effort." ROA.2817. It was only in 2020 that the County

instituted a policy unit "that's tasked with reviewing policy matters on a regular basis now and also working closely with different divisions concerned throughout the agency so that we can get feedback on policy matters that, maybe, need to be reviewed, reassessed, updated. We try to follow—keep up with case law that's developed over the years." ROA.2816. Sheriff Gonzalez further proves that he could have, but did not, implement the review team earlier than 2020: "[W]e had been talking about it for some time. And I think it was—we were moving in that direction, but I think it wasn't until, maybe, 2020 last year when—when—early on that I think we finally codified it and started developing and putting a team together." ROA.2818.

The record evidence further establishes that the review process is "critically important to reduce the incidents of shootings. It makes it safer for the officer as well as for the community for officers to have a complete understanding or are properly trained so those other areas that I mentioned earlier such as: De-escalation, time and distance, covering concealment, less-lethal force options, obviously, the physiological and psychological responses to a use of force incident." ROA.2711. Pre-shooting tactics must be evaluated to see if there needs to be revision of

additional documents and training documents that relate to pre-shooting tactics. ROA.2711. "And if there's—an officer has been properly trained and there's a departure from training, then obviously that should be examined through the review process and—and—and noted accordingly." ROA.2714; ROA2667 ("Harris County Sheriff's Office should conduct a comprehensive analysis of the use of deadly force not only to determine if the ultimate use of deadly force was reasonable based on the law, policy, and totality of the circumstances …."); ROA.2667 ("These types of decisions tend to have a ripple effect in the Department/Office because other Deputies believe they can engage in similar conduct without consequences and without receiving ongoing mandating perishable skills training to reduce or eliminate these incidents from occurring in the future.").

Harris County had ample opportunity to make an informed decision, creating sufficient evidence to create a fact issue as to whether the County had an official policy of failing to systematically review use of force incidents in order to make policy revisions, recommendations, and changes. The decision to not implement a review team prior to Mr.

Thomas's death could be considered deliberate. *See Sanchez v. Gomez,* 2020 WL 1036046, at *14.

### 2.   *Harris County failed to equip officers with less-lethal force options.*

Harris County maintains—but the evidence disputes—that Brewer "was trained by Harris County and Precinct 4 in less lethal excessive force, such as use of a taser, pepper spray and baton." Even assuming that training was adequate, Harris County's failure to equip its officers with critical instruments of less-lethal force—despite allegedly recognizing the need for such equipment to comply with the constitutional requirements of reasonable force—violates *Monell.* Brewer made clear that Harris County did not issue pepper spray:

> Q.   Did the Harris County Sheriff Department, did that department issue pepper spray?
>
> A.   Did they issue pepper spray? I don't think so. No. No. No, I don't think so. ROA.3053-54.

He made clear that Harris County did not issue a baton:

> Q.   Did they issue a baton?
>
> A.   No. . . .
>
> ***
>
> Q.   Okay. Did they issue a baton at Precinct 4?

A.    No.

Q.    Do you know why it is that you'd be trained in the use of pepper spray and a baton at the Harris County Sheriff Department and the department wouldn't issue those weapons to you as an officer?

A.    No. I just know that they are—no, I don't—you're—you're asking me if I know why they didn't issue them to me?

Q.    Right. Did anyone ever tell you, "Hey, we're going to train you with the use of these intermediate weapons on the force continuum, but we're not going to issue those weapons to you to utilize in the street for your protection"?

A.    No. I'm not sure why, sir.

ROA.3053-54.

Harris County "failed to properly train and require Deputy Cameron Brewer to carry the following Less Lethal Force options in the field to include: Baton/Collapsible Baton, ASP; Oleoresin Capsicum 'OC' Spray; and Remington 870 Bean Bag Shotgun." ROA.2173. Harris County's failure to equip officers with such devices can reasonably be considered a custom, as there are over 2,500 sworn Harris County Sheriff's officers and they are not issued such less-lethal force options. ROA.2173, 2578.

3.    ***There is a pattern demonstrating excessive force against African American males and those in medical crisis, and a pattern of failure to render medical aid.***

Harris County in its Justice Administration Department report to the Harris County Commissioner's Court itself acknowledged that "existing data show [sic] some racial/ethnic disparities in rates of arrests, citations, and use of force." ROA.3269; *see also Bennett*, 728 F.2d at 768 ("Where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation."). The report revealed that "Harris County Law Enforcement Agencies use force that results in bodily injury against Black and Hispanic drivers more frequently than against other racial and ethnic groups." ROA.3279. And that "Harris County Law Enforcement Agencies use force against Black and Hispanic drivers in Harris County significantly more frequently than against other racial and ethnic groups." ROA.3293. Further, it stated that "the overreliance on force against specific communities elevates the necessity for greater data and incident transparency against Harris

County Law Enforcement Agencies, especially the eight Constable Precincts and the Harris County Sheriff's Office." ROA.3278.

Further in June 2009, the United States Department of Justice Civil Rights Division investigated the Harris County Jail, which is run by the Harris County Sheriff's Department, and found significant constitutional deficiencies. ROA.3350. In particular, the DOJ criticized Harris County for its excessive use of force, flawed use of force policies, and noted that there was not an "appropriate administrative process for reviewing use of force." ROA.3364. These flaws were determined by the Department of Justice to be "systemic." ROA.3350.

In *LaGatta v. Harris County*, No. H-08-3189, 2011 WL 1100170, *1 (S.D. Tex. 2011), Michael P. LaGatta filed suit against Harris County for its policies, practices, and customs including responsiveness to "'significant violence against pre-trial detainees,' 'access to medical care,' 'failures to train, discipline or supervise law enforcement officers,' as well as ratification of the acts of its agents by its subsequent failure to discipline or retrain those involved." In support of his claims, Mr. LaGatta cited the *exact same* DOJ letter at issue here. *LaGatta*, 2011 WL 1100170 at *4. The Southern District of Texas, in denying Harris

County's motion to dismiss, held that "[f]rom the DOJ letter excerpted above, there is a basis for inferring that the policymakers are chargeable with awareness of the **custom**." *Id.* (internal quotation and citation omitted) (emphasis added); *see also Loftis v. Dallas Cnty., Tex.*, No. 3:10-CV-0116-B, 2011 WL 4090962, *5-6 (N.D. Tex. Sept. 14, 2011) (finding that the plaintiff raised a genuine issue of material fact by relying, in part, on a 2006 DOJ Report investigating the county's conditions, which concluded that conditions of confinement violated detainees' constitutional rights). Although Harris County claims that it had a lawful written use of force policy, it nevertheless ratified and condoned a custom and practice of allowing officers to use excessive force against suspects who posed no threat of serious harm. The evidence of rampant and unreasonable uses of force in the Harris County Sheriff's Department is sufficient to establish that Brewer was operating pursuant to an unwritten-but-still-official policy of utilizing excessive force.

Moreover, in *Harris County v. Coats,* 607 S.W.3d 359, 365 (Tex. App.—Houston [14th Dist.] 2020), Mr. Amron, a minority man, was killed after he called EMS because he took too many muscle relaxers. EMS requested backup from the police. Upon entering the scene, Harris

County officers cuffed and restrained Mr. Amron. He started to struggle with them toward the end of their encounter, which was when a Harris County officer put Mr. Amron on the ground and pressed his boot over Mr. Amron's nose and mouth, eventually killing Mr. Amron. *Id.* at 385. This case was not dismissed on summary judgment and was **tried to a jury** who found that the officer used excessive force, that was objectively unreasonable. *Id.* The differences between *Coats* and this case are inconsequential—the lethal use of a foot versus a gun is still excessive when there is no imminent threat to officer in either position. *See also* ROA.2589-93 (detailing other cases and similar events).

### 4. *Harris County's unconstitutional policies were a moving force Behind Mr. Thomas's constitutional deprivations and Harris County was deliberately indifferent.*

The aforementioned unconstitutional policies and customs were the moving force behind Mr. Thomas's constitutional deprivation.

A municipal action is a moving force when the "action was taken with the requisite degree of culpability and . . . [there is] a direct causal link between the municipal action and the deprivation of federal rights." *Valle v. City of Houston*, 613 F.3d at 542 (*quoting Bd. of the Cty. Comm'rs*

*v. Brown*, 520 U.S. at 404).  That is, "the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 542. "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Bryan Cty., Ok.,* 219 F.3d 450, 457 (5th Cir. 2000). "[I]n light of the duties assigned to specific officer or employees the need for more or different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. at 390. Furthermore, a county can be held liable even for a single decision of the policymaker if there is evidence that would support a finding that it was obvious the offending officer in question was "highly likely to inflict the particular injury suffered by the plaintiff." *Brown v. Bryan Cnty, Ok.,* 219 F.3d at 461 (citations omitted)).

The evidence here demonstrates that Sheriff Gonzalez did not have a systemic use of force review policy in place from at least the time that he took office in 2016 until 2020. ROA.2816-17. As detailed above, he

explained they had been discussing it for some time, but did not actually implement it until 2020. ROA.2816-17.  This review process is critical because inadequacies in training and execution will be addressed in that process and can be eliminated in the future. ROA.2632. As opined by Sgt. DeFoe, "[T]hese significant failures should have been addressed by the Harris County Sheriff's Office to properly examine its policies and procedures and training to ensure incidents like this do not occur in the future." ROA.2632.

Harris County cannot claim to have been ignorant about the uses of force against individual exhibiting signs of mental and physical distress, or against unarmed individuals who are not suspected of committing a serious crime. This fact is evidenced by the Jamail Amron case, who, like Mr. Thomas, was at most suspected of perhaps a misdemeanor, was unarmed, and suffering from a condition, and by the other cases detailed above. "These types of decisions tend to have a ripple effect in the Department/Office because other Deputies believe that they can engage in similar conduct without consequences and or without receiving ongoing mandated perishable skills training to reduce or eliminate these incidents from occurring in the future." ROA.2637.

Nor can Harris County claim ignorance of its failure to equip officers with less-lethal means of force like OC spray, pepper spray, batons, or bean bag shotgun. Harris County itself, in its own Use of Force Policy,[3] details a use of force continuum that includes "intermediate weapons" including "soft intermediate weapons" and "chemical weapons."[4] Yet, Harris County does not equip its officers with such intermediate weapons or require its officers to carry these less-lethal force options in the field. ROA.2632. That means that Harris County officers are not given the necessary tools to even follow the use of force policy, even assuming they were properly and adequately trained on it. The record evidence here demonstrates that Brewer was not equipped with a baton, pepper spray, or chemical spray on the day of the incident and thus could not have utilized these less-lethal means of force even if he wanted to.[5] This reflects Harris County's "conscious disregard of [] obvious risk[s] that a use of excessive force would follow." *Bryan Cty.*, 520 U.S. at 415.

---

[3] Appellants are not conceding that officers were appropriately or adequately trained on this policy.

[4] ECF No. 71-17 at 15, 17

[5] ECF No. 71 at 6, n. 15 ("Mr. Brewer was not armed with pepper spray or a baton that day.").

Lastly, Harris County's knowledge and the history of failure to render medical care is evidence of the County's deliberate indifference. The evidence establishes that Brewer's "failure to provide proper emergency medical treatment to include Cardiopulmonary Resuscitation (CPR) until the arrival of Emergency Medical Services (EMS) fell below the standard of care." ROA.2635; *see also Salcido as Next Friend of K.L. v. Harris County, Tex.*, No. H-15-2155, 2018 WL 6618407 (S.D. Tex. Dec. 18, 2018) ("[A] reasonable jury could conclude that Harris County trained its officers to ignore complaints of an inability to breathe during restraint, and that training reflects deliberate indifference to a serious medical need.").

## B.    Harris County is subject to liability for failure to train.

The standard applicable to a failure-to-train claim is the same as the standard for municipal liability. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty*, 219 F.3d at 457 (*quoting City of Canton v. Harris*, 489 U.S. at 390. "In resolving the issue of a city's liability, the focus must be on

adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton,* 489 U.S. at 390. A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy. *See, e.g., Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Pineda*, 291 F.3d at 332. There are genuine issues of material fact on Harris County's failure to train that preclude summary judgment.

Scott A. DeFoe, retired LAPD SWAT Sergeant II+1, opined (and explains his opinions) that HCSO failed to properly train its deputies on the following subject matters:

- Proper Response and Interaction with the Mentally Ill;
- De-escalation and Defusing techniques;
- Crisis Intervention Training;
- Verbal Strategies;
- Active Listening Skills;
- Working as a Team;
- Containment;
- Cover and Concealment;
- Waiting for Additional Resources to include Back-Up Deputies;
- Command and Control/Supervisory Oversight/Management;

- Use of Less Lethal Force Options to Include Taser (ECW), KP, Impact Weapons, Long Range Impact Devises (37mm/Bean Bag Shotgun/40mm), Oleoresin Capsicum Spray;
- Time and Distance;
- Negligent Discharges/Firearms Training;
- Psychological and Physiological Responses to a Law Enforcement Incident (tunnel vision, auditory exclusion, managing fear and anger);
- Reasonable Force;
- Deadly Force and Shooting into or from Moving Vehicles.

ROA.2637, 2713, 2715, 2719, 2723, 2748, 2751-68.

For instance, DeFoe explained that Brewer had "a gross lack of situational awareness and fundamental tactical errors" and "poor tactical decision-making and pre-shooting tactics" which were "significant failures [that] that should have been addressed by the Harris County Sheriff's Office . . . policies and procedures . . . ." ROA.2633. This gross lack of situational awareness is directly related to the inadequate training:

> Gross lack of situational awareness comes by based on the way which you were trained. Not only trained the way of policies and procedures, but practical real life situational based training that gets as close as possible to what an officer may experience in the field; and, obviously, it allows an officer to, obviously, formulate tactical strategies, planning, communication, less-lethal force options, de-escalation, diffusing, waiting for backup, notifying dispatch.[6]

---

[6] Ex. 6 at 100:20-101:9.

He opines that "the Harris County Sheriff's Office failed to properly train and require Deputy Cameron brewer to carry the following Less Lethal Force options in the field to include: Baton/Collapsible Baton, ASP; Oleoresin Capsicum 'OC' spray; Remington 870 Bean Bag Shotgun." ROA.2632.   The evidence supports that "Deputy Cameron Brewer was not properly trained on the effectiveness of the Taser Electronic Control Device especially for individuals that possibly could be experiencing signs or symptoms of Excited Delirium." ROA.2632. Sgt. DeFoe explained that Brewer had inadequate training on the use of a taser:

> [T]he issue I have with his—his training on the taser, Counsel, is that he didn't understand their taser's capabilities; he didn't understand their taser's limitations; he had a—a—a misperception about the taser being utilized if someone is experiencing excited delirium; he didn't understand the effective range of the taser; when it could be used, obviously, to achieve neuromuscular incapacitation based on his—his testimony in this case.

ROA.2709. DeFoe further details that Brewer was not "properly trained based on his responses and based on his actions that day." ROA.2713-14.

Moreover, Brewer's very own deposition testimony demonstrates Harris County's failure to train or inadequate training regarding the reasonable and appropriate use of force:

Q.    At Harris County Sheriff's Department, does the policy state that you are not to use deadly force to either arrest someone who is suspected of a misdemeanor or someone who is in the process of committing a misdemeanor? Is that what the policy states?

A.    You're asking if the policy states that a person who's only committing a misdemeanor, deadly force is not to be used against them? Is that what you're saying?

Q.    Yes. Is that what the policy states?

A.    No, not to my knowledge. No.

ROA.3055. Brewer admits that "I wasn't clear that that was the policy." ROA.3056.

> ***1.    Harris County cannot rely on compliance with TCOLE to circumvent summary judgment because there are gaps in Brewer's training record and the evidence demonstrates the training was otherwise inadequate.***

Below, Harris County suggested that compliance with TCOLE requirements is sufficient to grant summary judgment, ECF NO. 76 at 13-14. However, courts have instructed that while "compliance with state requirements [is] a factor counseling against a failure to train finding," a plaintiff can "establish[] that the [entity's] training practices are

inadequate." *Sanchez v. Gomez*, 2020 WL 1036046, at *36 (W.D. Tex. Mar. 3, 2020) (*citing Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 5th Cir. 2010)).

First, there is a question of fact that Brewer actually satisfied the requirements as he did not have annual training in certain areas as required. ROA.2247-48. That fact alone is sufficient to deny summary judgment and allow the jury to evaluate the evidence. *See Sanchez v. Gomez*, 2020 WL 1036046 at *36 (denying a motion to dismiss on inadequate training when the officer failed to take a required refresher mandatory mental health training).

Second, meeting the requirements on paper, which is questionable here, does not accurately reflect the amount of training that Brewer actually received. *See id.*[7] Here, the evidence establishes that there are gaps in Brewer's training—Brewer did not have lethal use of force training in 2012, 2016, 2017 or 2018; did not have any less-lethal force training, such as use of a taser or OC Spray, in 2016, 2017 or 2018; did not have any taser training in 2015; and did not have any OC Spray training in 2013. ROA.2247-49. Brewer should have had use of force

---

[7] *See also supra* Part C (detailing Brewer's belief that the Use of Force policy did not prevent deadly force in response to a misdemeanor).

training on an annual basis, but such training is not reflected in his file. ROA.2258, 2308-9. These gaps are sufficient to deny summary judgment on this ground. *See Sanchez v. Gomez*, 2020 WL 1036046 at *36 ("Given these gaps, the Court is of the opinion that it is ill-equipped to decide whether this amount of training is sufficient to justify taking a fact issue away from the jury.").

### 2. *Harris County's failure to train was a moving force behind decedent's constitutional deprivations.*

A reasonable jury could conclude that had Brewer received adequate training, he would have taken a different course of action that afternoon. *See Sanchez v. Gomez*, 2020 WL 1036046, at *36. The jury could believe the testimony of DeFoe who, when asked if "it would have made a difference had Cameron Brewer been given this training," responded:

> One hundred percent. …I don't believe we're having this conversation but for that. Because once again, I believe that— that Brewer would have understood the capabilities and limitations of the taser; he would have understood what the– once again, he did not attend excited delirium training. Last time he—he attended it was February 26th of 2015.

ROA.2294.

Additionally, even if a reasonable jury were to determine that Harris County's training policies were substantively consistent with the Constitution, but were inadequately administered, "the jury would have then have to consider whether [the] Defendant . . . violated [the Plaintiff's] constitutional rights because of a lack of training." *See Sanchez v. Gomez*, 2020 WL 1036046, at *36. Just as in *Sanchez v. Gomez*, there is sufficient evidence for such a finding. *Id.; see also* ROA.2247, 2192-2210. Considering the facts in the light most favorable to the Plaintiffs, as is required at this stage of the proceedings, mandates denying Harris County's motion for summary judgment. *See id.*

### 3.    *Harris County was deliberately indifferent to its failure to train.*

Deliberate indifference can be shown by "a systemic failure attributable to the [municipality]." *Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017). To show deliberate indifference, it must be "obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cty.,* 973 F.2d 386, 392 (5th Cir. 1992); *see also Sanchez v. Gomez*, 2020 WL 1036046, at *37. "For example, arming officers with guns but failing to train them on the constitutional limits of the use of deadly force would amount to deliberate

indifference." *Sanchez v. Gomez*, 2020 WL 1036046, at *37 (*citing Rhyne*, 973 F.2d at 392). In such circumstances, "'the need for more or different training is obvious . . . [and] the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (*quoting Connor v. Travis Cty.,* 209 F.3d 794, 796-97 (5th Cir. 2000)).

As Appellants demonstrated above, Sheriff Gonzalez was aware of the training deficiencies of his employees, however, did nothing about it until after Mr. Thomas' shooting. ROA.2359, 2816-18. Therefore, summary judgment regarding Appellants' failure to train claim should have been denied, and the district court's decision should be reversed.

## C.  Summary judgment was improperly granted as to Appellants' ADA and RA claims.

Harris County moved for summary judgment below, contending that Plaintiffs' Americans with Disabilities Act ("ADA") claim is precluded by *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000). The court in *Hainze* ruled that when officers are faced with **exigent circumstances,** they do not need to take into account whether their actions would violate the Americans with Disabilities Act ("ADA"). *Id.* However, subsequent applications of the law in *Hainze* have different

outcomes depending on whether or not the individual at issue posed a threat.

No exigent circumstances existed in this case to preclude compliance with the ADA. The lower court acknowledged that Mr. Thomas did not pose an imminent threat. The lower court went on to state that, "Mr. Thomas, while perhaps not an imminent threat, was not secured before Brewer employed lethal force" and opining that this elevated this encounter to the level of "exigent." *Id.* at 48. However, if this were true, officers could discard of ADA requirements anytime they encountered a potential suspect, regardless of whether or not that suspect posed any risk to the safety of themselves or those around them. If this reading of the case law were allowed to stand, the exception would swallow the rule.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs-Appellants respectfully request that this Court reverse the decision of the district court and remand this case for further proceedings.

Respectfully submitted this 24th day of January, 2023.

*/s/ Marion M. Reilly*

Robert C. Hilliard
Rudy Gonzales
John B. Martinez
Marion M. Reilly
Jessica J. Pritchett
Matthew McMullen
HILLIARD MARTINEZ GONZALES LLP
719 South Shoreline Boulevard
Corpus Christi, Texas 78401
Telephone: (361) 882-1612
hmgservice@hmglawfirm.com

Ben Crump
BEN CRUMP LAW PLLC
122 S. Calhoun Street
Tallahassee, FL 32301

A. Vince Colella
MOSS & COLELLA
2811 Northwestern Hwy
11th Floor, Suite 1150
Phone: (248) 945-0100

**ATTORNEYS FOR PLAINTIFFS-APPELLANTS**

## CERTIFICATE OF SERVICE

I, Marion M. Reilly, certify that on today, January 24, 2023 a copy of the foregoing Brief for Appellants and the Official Record in this case were served electronically upon:

*Via email*: Stan.clark@cao.hctx.net
Stan Clark
Senior Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
P: (713) 274-5133
F: (713) 755-8924
*Counsel for Defendant Harris County*

*Via Email:* rhcobbsr@aol.com
Richard H. Cobb
Law Office of Richard H. Cobb
1035 Dairy Ashford, Suite 315
Houston, Texas 77079
*Counsel for Cameron Brewer*

*/s/ Marion M. Reilly*

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Circuit Rule 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5th Circuit Rule 32.2.7(b).

1.    Exclusive of the portions exempted by 5th Circuit Rule 32.2.7(b)(3), this brief contains 11,331 words printed in a proportionally spaced typeface.

2.    This brief is printed in a proportionally spaced, serif typeface using Century Schoolbook 14-point font in text and Century Schoolbook 12-point font in footnotes produced by Microsoft Office Word for Mac software.

3.    Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Circuit Rule 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*/s/ Marion M. Reilly*